FARGO WOMEN'S HEALTH ORGA-
NIZATION, INC., Robert Lucy, M.D.,
George Miks, M.D., & Jane Doe, Plain-
tiffs and Appellees,

v.

Patricia LARSON, Darrold Larson, David
Pence, Terri Carlson, John Robertson,
Robyn Robertson, Loralee Isaacson, di-
rectors of the FM Women's Help and
Caring Connection d/b/a Women's
Help Clinic, Defendants and Appel-
lants.

Civ. No. 10946.

Supreme Court of North Dakota.

Jan. 7, 1986.

William Kirschner, Fargo, for plaintiffs and appellees.

Jean Samelson, Fargo, Michael P. Farris, General Legal Counsel, and Jordan W. Lorence, Staff Counsel, Concerned Women for American Education and Legal Defense Foundation, Washington, D.C., for defendants and appellants; argued by Michael P. Farris and Jean Samelson.

GIERKE, Justice.

The defendants (the Help Clinic) appeal from an order of the district court imposing a preliminary injunction against their use of false and deceptive advertising and related activity pending a final determination in this case. We modify the order and, as modified, affirm.

Following its entry of the preliminary injunction, the trial court entered an order finding the Help Clinic in contempt of court for violating the preliminary injunction. We issued a temporary stay of the contempt order pending this appeal, and we now vacate that temporary stay.

The plaintiffs (Women's Health) operate a medical clinic in Fargo which performs abortions. The Help Clinic, also operating in Fargo, provides pregnancy tests and anti-abortion counseling services but does not perform abortions. During January 1985, Women's Health filed an action for damages and injunctive relief asserting that the Help Clinic, through false and deceptive advertising and related activity, misleads persons into believing that abortions are conducted at the clinic with the intent of deceptively luring those persons to the clinic to unwittingly receive anti-abortion propaganda. Women's Health also asserts that the Help Clinic uses the similar name "Women's Help Clinic" to intentionally confuse women seeking abortions from Women's Health and to cause them to mistakenly contact the Help Clinic.

Upon filing the action, Women's Health requested the trial court to enter a preliminary injunction to enjoin all deceptive advertising and related solicitation practices by the Help Clinic during the pendency of this action. Following a non-evidentiary hearing, the district court entered an order granting the preliminary injunction from which the Help Clinic has now filed this appeal.

On its appeal, the Help Clinic has raised the following issues:

(1) Whether the trial court abused its discretion in granting a preliminary injunction under Section 32–06–02(1), N.D.C.C.;

(2) Whether the trial court's imposition of a preliminary injunction unconstitutionally infringed upon the Help Clinic's First Amendment rights against prior restraint;

(3) Whether the North Dakota false advertising law, Chapter 51–12, N.D.C.C., is applicable to advertisements of the Help Clinic, and, if so, whether the law violates the Help Clinic's

rights of free speech under the First Amendment;

(4) Whether Women's Health has a cause of action for tradename infringement under the circumstances of this case; and

(5) Whether the trial court should have dismissed the second cause of action for damages brought by Women's Health because that action is filed on behalf of an unknown, unnamed fictitious person.

■ Pursuant to Section 32–06–02(1), N.D.C.C., the court may enjoin conduct which, if not restrained, would produce injury to the plaintiff "when it shall appear by the complaint that the plaintiff is entitled to the relief demanded." On appeal, this Court will not set aside an order granting a preliminary injunction unless the trial court abused its discretion in entering the order. *Advanced Business Telephones, Inc. v. Professional Data Processing, Inc.*, 359 N.W.2d 365 (N.D.1984).

The trial court's order imposing a preliminary injunction provided in relevant part:

"THEREFORE IT IS ORDERED, ... that the defendant be enjoined from using the name Women's Help Clinic, or comparable words which are similar, and confusing....

"... [T]hat the defendants individually and collectively, jointly and severally, shall be prohibited from falsely and deceptively advertising that they provide elective abortions and financial assistance for such services.

"... [T]hat the defendants do not falsely lull people that come to them for counseling into thinking that they are, in fact, the Women's Health Organization or the Fargo Women's Health Organization, Inc. and that the defendants take no action or inaction which would lull people into believing that they are dealing with the Fargo Women's Health Organization, Inc. when they are in fact dealing with defendants or F–M Women's Help and Caring Connection, Inc....

"... [T]hat if the defendants advertise using the term abortion, then they must state that they do not perform abortions."

■ In determining whether or not the trial court abused its discretion in granting the preliminary injunction, we are bound by the facts as presented to the trial court. *See Edgeley Education Association v. Edgeley Public School, Etc.*, 231 N.W.2d 826 (N.D.1975). In reaching its decision, the trial court considered affidavits filed by the parties and argument presented by counsel for the parties. In addition, the trial court had before it the Help Clinic's newspaper and telephone book yellow page advertisements.[1]

1. Copies of typical advertisements sponsored by the Help Clinic are reproduced here:

Prior to granting the preliminary injunction, the trial court determined that Women's Health had made a prima facie showing that the Help Clinic was sponsoring false and deceptive advertising which, if allowed to continue during the litigation, would result in injury to Women's Health. We agree that Women's Health made a sufficient showing at this preliminary stage of the proceedings, with adequate allegations and supporting affidavits, to show probable success on the merits so as to justify the imposition of the preliminary injunction. Accordingly, we conclude that the trial court did not abuse its discretion in granting the preliminary injunction.[2]

█ With one exception, the trial court's order was narrowly drawn, focusing only upon the prohibition of deceptive or misleading activity by the Help Clinic during the pendency of the action. However, we believe that the last part of the order which requires the Help Clinic, if it uses the term abortion in its advertisements, to state that it does not perform abortions is redundant and an unduly broad restriction, the imposition of which constituted an abuse of discretion by the trial court. Other provisions of the trial court's order adequately prohibit the Help Clinic from "falsely and deceptively advertising that they provide elective abortions." Consequently, the additional requirement in the court's order that the Help Clinic affirmatively state that it does not perform abortions is merely redundant and unnecessary to accomplish the objective of preventing false and deceptive activity. Accordingly, we hold that the order should be modified by striking the following:

"IT IS FURTHER ORDERED that if the defendants advertise using the term abortion then they must state that they do not perform abortions."

**FINANCIAL ASSISTANCE AVAILABLE**

# ABORTION

- •ADVISORY SERVICES
- •PREGNANCY TESTS
- •CONFIDENTIAL

## WOMEN'S HELP CLINIC OF FARGO
## 232-2716
CALL COLLECT

**Women's Help Clinic**

**Contemplating**
## ABORTION?
*Call Us First For Your Protection*

- •Confidential • we don't trace calls
- •Financial assistance
- •Free pregnancy test
- •Indecision counseling— Pro-Life
- •Services performed by licenced physicians.

**701-232-2716**
Answered 24 hrs.
**CALL TOLL FREE**
**ND 1-800-732-2422**
**MN SD 1-800-362-3145**

2. This determination on the preliminary injunction is in no way meant to be an expression of the outcome of subsequent proceedings on the merits or of the appropriateness or breadth of permanent injunctive relief.

The Help Clinic also asserts that the preliminary injunction [3] constitutes an unconstitutional prior restraint in violation of the First Amendment.

Any system of prior restraint on speech bears a heavy presumption against its constitutional validity. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). The United States Supreme Court has described the conflict between prior restraint and First Amendment free speech guarantees:

> "The special vice of a prior restraint is that communication will be suppressed, either directly or by inducing excessive caution in the speaker, before an adequate determination that it is unprotected by the First Amendment." *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations,* 413 U.S. 376, 93 S.Ct. 2553, 2561, 37 L.Ed.2d 669, *reh'g denied,* 414 U.S. 881, 94 S.Ct. 30, 38 L.Ed.2d 128 (1973).

However, commercial speech does not receive the full panoply of protection under the First Amendment as do other forms of protected speech. *Zauderer v. Office of Disciplinary Counsel,* —— U.S. ——, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); *Central Hudson Gas v. Public Service Commission of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Although the extent to which the prior restraint doctrine applies to commercial speech has not been fully delineated, it is quite clear that prior restraint on commercial speech is allowed to an extent which would not be allowed toward other forms of protected speech. *Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). See also *Kleiner v. First National Bank of Atlanta,* 751 F.2d 1193 (11th Cir.1985); *United States Postal Service v. Athena Products,* 654 F.2d 362 (5th Cir.1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1768, 72 L.Ed.2d 173 (1982). Therefore, in determining whether the trial court's preliminary injunction constituted an unconstitutional prior restraint,

it is necessary to determine whether the Help Clinic's communication constituted commercial or non-commercial speech and then to determine whether the trial court afforded appropriate safeguards in imposing the preliminary injunction commensurate with the type of speech involved.

In *Zauderer, supra,* 105 S.Ct. at 2274–75, the United States Supreme Court stated:

> "There is no longer any room to doubt that what has come to be known as 'commercial speech' is entitled to the protection of the First Amendment, albeit to protection somewhat less extensive than that afforded 'noncommercial speech.' More subject to doubt, perhaps, are the precise bounds of the category of expression that may be termed commercial speech, but it is clear enough that the speech at issue in this case—advertising pure and simple—falls within those bounds. Our commercial speech doctrine rests heavily on 'the "common-sense" distinction between speech proposing a commercial transaction ... and other varieties of speech,' ..." [Citations omitted.]

The Help Clinic asserts that its communication is not commercial speech because no financial charges are assessed against persons receiving services from the clinic. On the record before us, it is not clear to what extent, if any, monies are exchanged between the Help Clinic and its clientele. However, the Help Clinic advertisements expressly state that financial assistance is available and that major credit cards are accepted. Through one of its affidavits, Women's Health asserts that in at least one instance a person who responded to the advertisements was referred to a physician by the Help Clinic and was charged for the counseling services rendered by the physician. Irrespective of the degree, if any, that monies are received by the Help Clinic from its clients we do not believe that factor is dispositive of our determination

---

**3.** In deciding this constitutional issue, we are reviewing the trial court's order as modified by this Court in this opinion.

that the communication involved is commercial speech. More importantly, the Help Clinic's advertisements are placed in a commercial context and are directed at the providing of services rather than toward an exchange of ideas. The Help Clinic advertisements offer medical and advisory services in addition to financial assistance. In effect, the Help Clinic's advertisements constitute promotional advertising of services through which patronage of the clinic is solicited, and in that respect constitute classic examples of commercial speech.

The Help Clinic also asserts that its advertisements constitute advocacy of the pro-life position and for that reason are not commercial speech. We disagree. The communications of the Help Clinic to which the preliminary injunction is directed advertise services in a commercial context without substantial reference to or comment upon matters of public issue. The only reference in the Help Clinic's advertisements not dealing directly with the solicitation of clientele to receive medical or advisory services is the single word "pro-life" placed in some of the advertisements.

It is well settled that advertisers cannot, by merely including references to public issues or public debate, thereby take their advertisements out of commercial speech and into the area of fully protected speech. *Zauderer, supra; Bolger v. Youngs Drug Products Corporation*, 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983); *Central Hudson Gas v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). The rationale of the Supreme Court in this regard is equally clear:

"... [A]dvertising which 'links a product to a current public debate' is not thereby entitled to the constitutional protection afforded noncommercial speech. A company has the full panoply of protections available to its direct comments on public issues, so there is no reason for providing similar constitutional protection when such statements are made in the context of commercial transactions. Advertisers should not be permitted to immunize

false or misleading product information from government regulation simply by including references to public issues." [Citations omitted; Footnote omitted.] 103 S.Ct. at 2881.

To the extent that the Help Clinic is interested in advocating a social or political position on any issue it can do so outside the commercial context and receive full First Amendment protection; hence, it is unnecessary to extend the full panoply of First Amendment protections to the clinic's commercial solicitation of clientele.

This case is readily distinguishable from the case of *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), which involved a Virginia statute making it unlawful to publish any statement which encouraged the procuring of an abortion. The publisher of a Virginia newspaper was convicted for violating the statute by printing an advertisement for an organization which assisted in placing persons in accredited New York hospitals and clinics for purposes of obtaining abortions. The United States Supreme Court, in holding that the statute violated the publisher's First Amendment rights, concluded:

"The advertisement published in appellant's newspaper did more than simply propose a commercial transaction. It contained factual material of clear 'public interest.' Portions of its message, most prominently the lines, 'Abortions are now legal in New York. There are no residency requirements,' involve the exercise of the freedom of communicating information and disseminating opinion.

\* \* \* \* \* \*

"We need not decide in this case the precise extent to which the First Amendment permits regulation of advertising that is related to activities the State may legitimately regulate or even prohibit.

\* \* \* \* \* \*

"Here, Virginia is really asserting an interest in regulating what Virginians may *hear* or *read* about the New York services. It is, in effect, advancing an interest in shielding its citizens from information

about activities outside Virginia's borders, activities that Virginia's police powers do not reach. This asserted interest, even if understandable, was entitled to little, if any, weight under the circumstances.

"No claim has been made, nor could any be supported on this record, that the advertisement was deceptive or fraudulent, or that it related to a commodity or service that was then illegal...." [Footnotes omitted.] 95 S.Ct. at 2232–2236.

This case, unlike the fact situation in *Bigelow*, does not involve the prohibition or restriction of factual material of public interest apart from the mere commercial solicitation of clientele. This case is also substantively distinguishable from *Bigelow, supra*, because it involves a narrowly prescribed order temporarily restraining allegedly false and deceptive communication whereas *Bigelow, supra*, involved a broadly drawn statute prohibiting the dissemination of concededly accurate factual information on the basis of content.

■ We conclude that the communication at issue in this case is commercial speech. Accordingly, the constitutional validity of the preliminary injunction must be judged under a relaxed standard of scrutiny appropriate to commercial speech. *See Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir.1985); *United States Postal Service v. Athena Products*, 654 F.2d 362 (5th Cir.1981), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1768, 72 L.Ed.2d 173 (1982).

In its order notifying the parties of the time and place for hearing, the trial court stated that, although it would accept affidavits and oral arguments by the parties, no live testimony or depositions would be considered. The Help Clinic did not object to that order nor did it request the court to permit testimony or to accept other forms of evidence. Nevertheless, the Help Clinic now asserts that the trial court infringed

its First Amendment rights against prior restraint by imposing the preliminary injunction without benefit of an evidentiary hearing.

Prior to imposing the preliminary injunction the trial court considered the relief sought, the conflicting rights and interests of the parties involved, and the potential injury to the parties if the temporary injunctive relief was granted or denied. The trial court's order imposing a preliminary injunction was narrowly drawn so as to proscribe during the pendency of the action only deceptive and misleading activity. The court's order does not proscribe or restrict the Help Clinic from delivering services or from advertising its services so long as those activities are conducted in a nondeceptive manner.

■ There can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity or are more likely to deceive the public than to inform it. *Central Hudson Gas, supra; Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100, *reh'g denied*, 441 U.S. 917, 99 S.Ct. 2018, 60 L.Ed.2d 389 (1979). Given the commercial nature of the communication involved, the hearing afforded to the parties,[1] the trial court's consideration of the parties' varying interests, and the narrowness with which the order was drawn, we conclude that the temporary injunctive relief granted to Women's Health does not unconstitutionally infringe the Help Clinic's First Amendment rights.

The Help Clinic has raised the issue of whether North Dakota's false advertising statute, Chapter 51–12, N.D.C.C., is applicable to this case and has also raised the issue of whether Women's Health has a cause of action for tradename infringement. An opinion by us at this time on

---

**4.** Although there may be instances where free speech issues are raised that the providing of an evidentiary hearing would be a necessary prerequisite to imposing a temporary restraint, in this case the trial court's failure to hold an evidentiary hearing did not, in our opinion, offend the First Amendment rights of the Help Clinic. The process utilized by the trial court was adequate to protect the parties' interests.

those issues which involve the merits of the case would be advisory only. In reviewing the propriety of a preliminary injunction, it is inappropriate for this Court to resolve merit issues on the principal action. *Advanced Business Telephones, Inc. v. Professional Data Processing, Inc.*, 359 N.W.2d 365 (N.D.1984). We have examined the matters involved in those issues only to the extent necessary for our determination that the trial court, on the record before it, did not abuse its discretion in imposing the preliminary injunction. We decline to examine or discuss those issues to any further extent at this time.

The Help Clinic has also raised the issue of whether the trial court should have dismissed the second cause of action brought by Women's Health because that action was filed on behalf of an "unknown, unnamed fictitious person." The trial court stated that it would take the motion for dismissal under consideration and rule on it prior to a trial on the merits. Because the trial court has not entered a ruling on that motion, it is inappropriate for us to consider that issue on this appeal.

In accordance with this opinion, we affirm the order imposing a preliminary injunction, and we vacate our stay of the contempt order.

ERICKSTAD, C.J., and LEVINE and MESCHKE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I am far from convinced that the provision enjoining the defendants from using the name Women's Help Clinic or "comparable words which are similar, and confusing ..." is narrowly drawn. Rather, the provision pertaining to comparable words which are similar and confusing may be a very subjective standard, particularly in view of the evidence in the record that the Women's Health Organization used a variety of names in its own business, not all of which would be protected tradenames.